**Electronically Filed
Intermediate Court of Appeals
30528
23-DEC-2013
08:07 AM**

NO. 30528

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
MATTHEW S. LEWIS, aka: "ml808"; "mark", Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 08-1-1701)


MEMORANDUM OPINION
(By: Foley, Presiding Judge, Fujise and Leonard, JJ.)

Defendant-Appellant Matthew S. Lewis (**Lewis**) appeals from an April 26, 2010 Circuit Court of the First Circuit (**Circuit Court**) Judgment of Conviction and Sentence for one count of Electronic Enticement of a Child in the First Degree (**Electronic Enticement**), in violation of Hawaii Revised Statutes (**HRS**) § 707-756 (Supp. 2012), and three counts of Indecent Electronic Display to a Child (**Indecent Electronic Display**), in violation of HRS § 707-759 (Supp. 2012).[1]

On appeal, Lewis contends that: (1) the Electronic Enticement and Indecent Electronic Display charges violate the "dormant" Commerce Clause of the United States Constitution, as well as the free speech rights provided in the Constitutions of the State of Hawai'i and the United States; (2) Lewis's October 22, 2008 statement given to two Honolulu Police Department (**HPD**) detectives, while Lewis was in custody, was involuntarily obtained and without proper warning under Miranda v. Arizona, 384 U.S. 436 (1966); (3) Lewis should have been allowed to present

---

[1]     The Honorable Karen S.S. Ahn presided.

expert opinion evidence regarding his polygraph results; (4) the Circuit Court erred in concluding that there was sufficient evidence to sustain Lewis's October 28, 2008 Indictment; (5) the Circuit Court abused its discretion in allowing the State of Hawaiʻi (**State**) to present evidence regarding certain videos, screen captures, and chats; and (6) there was insufficient evidence to support Lewis's Electronic Enticement conviction. We affirm.

I.    BACKGROUND

    A.    The Alleged Actions Leading to Lewis's Arrest

On September 5, 2008, Lewis, a 33-year-old man who used the screen name "ml808," was on his computer in an internet chat room[2] where he purportedly met Shanna Lee, who used the screen name "shoyubunnie" (**Shanna Lee** or **"shoyubunnie"**). Shanna Lee, however, was a persona created by HPD detective Sandi Fujitani (**Fujitani**), who was assigned to investigate internet crimes against children. During the September 5, 2008 internet conversation, "shoyubunnie" represented herself as a 14-year-old girl who lived in Pearl City and attended Sacred Hearts Academy.

On October 13, 2008, Lewis again chatted online with "shoyubunnie," and they primarily discussed their respective sexual experience levels and the physical characteristics of Shanna (again including the fact that she was only 14). Lewis then invited "shoyubunnie" to view his web camera, and he proceeded to expose his genitals and masturbated live over the internet. During this time, the two engaged in a brief, sexually-explicit conversation. Lewis did not reveal his face in this session.

Lewis also exposed himself and masturbated to "shoyubunnie" on October 15, 2008, while having a sexually-explicit conversation in the online chat room. Again, Lewis did not expose his face. Afterwards, Lewis suggested that they meet "now," although they eventually agreed to meet later that night

---

     [2]    The particular chat room was on the website Yahoo, located under the "romance" section and with Hawaiʻi as its location.

2

at Zippy's. In order to arrange the meeting at a Zippy's restaurant, Detective Gary Sunada (**Sunada**) called Lewis while posing as "shoyubunnie." The two confirmed that they would meet at Zippy's "around nine-thirty, nine-forty five," and that Lewis would be wearing a "t-shirt and black pants" and would be "probably [driving] a white Toyota." Around 9:53 p.m., Lewis told "shoyubunnie" that he was "leaving now" and that it would take approximately 20 minutes to get to the Zippy's.

During this time, HPD detectives Paul Lucas (**Lucas**) and Randall Platt (**Platt**) were assigned to observe Lewis's residence. Around 10:05 p.m., Lucas observed someone enter a black Mazda, which was registered to Lewis, parked in front of the residence and leave the premises. The two officers followed the vehicle until it turned into the Zippy's parking lot around 10:30 p.m. Lewis slowly drove around the restaurant, looking inside, but never exited his vehicle or went in; after circling the entire lot, Lewis left. Later that night, he sent a message to "shoyubunnie" about waiting and not seeing her at the Zippy's restaurant. Fujitani, as "shoyubunnie," responded, saying that she was inside the restaurant.

On October 20, 2008, Lewis again exposed himself and masturbated through his web camera while chatting with "shoyubunnie". This time, however, Lewis briefly revealed his face, and Fujitani was then able to match his face from the web camera with his driver's license picture (thereby obtaining a positive identification).

Lewis was arrested on October 22, 2008. Following his arrest, at approximately 6:03 p.m., he was questioned by Fujitani and Sunada at the HPD's Central Receiving Division. Before questioning, Fujitani and Sunada apprised Lewis of his <u>Miranda</u> rights. As discussed further herein, Lewis indicated that he understood English, was not on any medication, understood his right to an attorney, and confirmed that he was not forced/coerced in any way to give a statement. Lewis then agreed to talk to the officers, confirming various facts including: (1) he chatted with "shoyubunnie" as "ml808" and exposed himself (and

masturbated) over his web camera; (2) he had arranged a meeting with "shoyubunnie" and drove around the Zippy's parking lot at the time they were supposed to meet; and (3) he "might" have had sex with Shanna if she showed up (it was supposedly a "twenty-five percent possibility," according to Lewis).

At no point during the interrogation did Lewis ask to stop the questioning; nor did he ask for an attorney's presence. When Fujitani was through with the questioning, she asked Lewis if "everything you told us tonight was voluntar[y], no one coerced you, forced you or threatened you in any way to make a statement to [the officers]?" Lewis answered "No, ma'am."

B.  The Indictment

On October 28, 2008, a Grand Jury Indictment was presented and filed, charging Lewis with one count of Electronic Enticement (**Count I**) and three counts of Indecent Electronic Display (**Counts II, III, and IV**). Detective Fujitani was the sole witness at the grand jury hearing. She testified that she began chatting with "ml808," who identified himself as "Mark Louis" but was later identified as Lewis, on September 5, 2008 under her "Shanna Lee" or "shoyubunnie" persona. The Grand Jury was also informed of the instances in which Lewis exposed himself to "shoyubunnie" through his web camera, as well as the attempted October 15, 2008 meeting. Fujitani described that Lewis's vehicle

> entered through the Ewa-most driveway, . . . slowly drove past the front of the Zippy's, that would be like the drive-in area, and then . . . proceeded Kokohead through the parking lot, turned around, made a right turn, turned back driving towards the restaurant again, and then proceeded to circle the whole restaurant before driving in front of the restaurant near the drive-in area a second time, again slowly driving past, and then it exited the middle driveway onto South King Street.

Finally, Fujitani recounted Lewis's interrogation following his arrest on October 22, 2008.

C.  The Circuit Court Proceedings

On February 26, 2009, Lewis filed Defendant's Motion to Suppress Statement. In the motion, Lewis argued that, although he was afforded his Miranda warnings, his statement was involuntarily given because he was "made to believe that if he

did give a statement to law enforcement personnel he would not be prosecuted and would be released from custody." Lewis testified that he was "scared" and "tired" when he was in the interrogation room. He also stated that he was hesitant to participate at first, but that he believed that his cooperation would allow him to go home.

On May 18, 2009, the Circuit Court issued its Findings of Fact, Conclusions of Law and Order Denying Defendant's Motion to Suppress Statement. Its rationale for the decision was based on the fact that Fujitani and Sunada read Lewis his rights and that neither of them promised him that giving a statement would allow him to go home or that he would not be charged. The court did find that Lewis was "frightened" and "tired from work and possibly not getting his maximum hours of sleep earlier that week." Lewis conceded that he read and understood his rights at the time and that he understood that he could stop answering questions at any point in the interview. In light of these facts, the Circuit Court concluded that Lewis was properly warned of his constitutional rights and that, based on the totality of the circumstances, Lewis's statements were voluntary.

On July 6, 2009, Lewis filed Defendant's Motion to Dismiss Count I of the Indictment Filed October 28, 2008, Based on Insufficient Evidence. Lewis argued that "no evidence was adduced before the grand jury that [he] 'intentionally or knowingly travel[ed] to the agreed upon meeting place at the agreed upon meeting time . . . .'" A hearing on the motion was held on July 28, 2009, and the Circuit Court concluded that there was sufficient evidence to support the October 28, 2008 Indictment, based on Fujitani's grand jury testimony.

On September 2, 2009, the Circuit Court filed its Findings of Fact, Conclusions of Law and Order Denying Defendant's Motion to Dismiss Count I of the Indictment Filed October 28, 2008, Based on Insufficient Evidence. In its order, the Circuit Court determined that the facts presented to the Grand Jury "could lead a person of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of

the guilt of the accused," citing <u>State v. Ontai,</u> 84 Hawai'i 56, 63, 929 P.2d 69, 76 (1996). Therefore, the Circuit Court concluded that there was sufficient evidence to sustain the Indictment.

On July 6, 2009, Lewis also filed Defendant's Motion To Admit Expert Opinion Evidence Regarding Polygraph Results and for Evidentiary Hearing (**Polygraph Motion**). In the motion, Lewis sought to introduce evidence related to a polygraph test administered by Certified Polygraph Examiner William Gillespie (**Gillespie**). Gillespie was to testify that Lewis answered "no" to two questions during a polygraph examination: (1) "Have you ever had sexual contact with any minor you met on the internet?"; and (2) "Of the minors you communicated with on the internet[,] have you ever had physical sexual contact with any of them?"

At a July 28, 2009 hearing on the Polygraph Motion, the Circuit Court denied the motion, citing <u>State v. Okamura,</u> 78 Hawai'i 383, 894 P.2d 80 (1995) and <u>Doe v. Doe,</u> 120 Hawai'i 149, 202 P.3d 610 (App. 2009). The court reasoned that those cases held that polygraph results are inadmissable at trial, whether offered by the State or a defendant. On August 31, 2009, the Circuit Court filed its Findings of Fact, Conclusions of Law and Order Denying Defendant's Motion to Admit Expert Opinion Evidence Regarding Polygraph Results and for Evidentiary Hearing, ruling based on the same grounds articulated at the July 28, 2009 hearing.

On October 30, 2009, Lewis filed a Motion to Dismiss for Violations of the Constitution of the State of Hawaii and the Constitution of the United States. Lewis argued that HRS §§ 707-756 and 707-759 are unconstitutional because they violate the First Amendment (free speech rights) and Article I, Section 8, Clause 3 (the Commerce Clause) of the United States Constitution, as well as Article I, Section 4 of the Hawai'i Constitution (free speech rights). Following arguments on the December 7, 2009 motion, the Circuit Court denied Lewis's motion on both Commerce Clause and free speech grounds. On May 24, 2010, the court entered its Findings of Fact, Conclusions of Law and Order

Denying Defendant's Motion to Dismiss for Violations of the Constitution of the State of Hawaii and the Constitution of the United States.

Before trial, on February 17, 2010, Lewis pled guilty to all three counts of Indecent Electronic Display.  After Lewis's plea, the State sought to introduce Camtasia[3] videos of Lewis exposing himself and masturbating through his web camera.  In support, the State argued that the videos were necessary to prove that Lewis had the intent to commit a sexual offense, as is required by HRS § 707-756.  The State also posited that the Camtasia video from October 20, 2008 was particularly important because, at the conclusion of that recording, Lewis's face appears, and this was used to help positively identify him as "ml808."  Lewis argued that the State had sufficient evidence without the Camtasia videos and that the videos were more prejudicial than probative.

The Circuit Court considered the arguments and ruled that the Camtasia videos were admissible under the Hawaii Rules of Evidence (**HRE**) because they were relevant to the Electronic Enticement charge, they went to the issue of Lewis's sexual intent with "Shanna," they helped to positively identify Lewis, and they would corroborate what was occurring in the text of the chat.  The court also noted that it would limit the prejudicial impact of the recordings by issuing cautionary instructions to prevent the jury from considering the Camtasia videos for improper purposes, directing the jury to only consider the videos for the purpose of determining Lewis's state of mind.

The jury ultimately found Lewis guilty of the Electronic Enticement charge.  On April 26, 2010, the Circuit Court entered a Judgment of Conviction and Sentence, sentencing Lewis to ten years in prison.  Lewis timely filed a notice of appeal.

---

[3]     Camtasia is a computer program that allows the user to record what is on the user's screen at a given time.

II. POINTS OF ERROR

Lewis raises six points of error on appeal, arguing that the Circuit Court erred:

(1) in concluding that the charge of Electronic Enticement of a Child in the First Degree, pursuant to HRS § 707-756, and the three charges of Indecent Electronic Display to a Child, pursuant to HRS § 707-759, do not violate Article I, Section 8 of the United States Constitution, Article I, Section 4 of the Hawai'i Constitution, and the First Amendment of the United States Constitution;

(2) in concluding that Lewis's statement to two HPD detectives on October 22, 2008 was given pursuant to proper warning under Miranda v. Arizona, 384 U.S. 436 (1966) and was voluntarily given;

(3) in denying Lewis the opportunity to admit expert opinion evidence regarding polygraph results and an evidentiary hearing;

(4) in concluding that there was sufficient evidence to sustain Count I of Lewis's Indictment, the Electronic Enticement charge;

(5) in abusing its discretion by allowing the State to present evidence regarding the Camtasia videos, screen captures, and chats; and

(6) because there was insufficient evidence to support Lewis's Electronic Enticement conviction.

III. APPLICABLE STANDARDS OF REVIEW

The appellate court reviews questions of constitutional law *de novo* under the 'right/wrong' standard. See, e.g., State v. Fields, 115 Hawai'i 503, 511, 168 P.3d 955, 963 (2007). Every duly-enacted statute is presumptively constitutional, and the party challenging the statute must carry a heavy burden to overcome this presumption. State v. Gaylord, 78 Hawai'i 127, 137, 890 P.2d 1167, 1177 (1995). Whenever possible, a penal statute will be read narrowly and in such a manner as to preserve the statute's constitutionality. Id. at 137-38, 890 P.2d at 1177-78.

The Hawai'i Supreme Court has stated the following regarding sufficiency of evidence to support an indictment:

> A grand jury indictment must be based on probable cause. Probable cause is established by a state of facts as would lead a person of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused. The evidence to support an indictment need not be sufficient to support a conviction. In reviewing the sufficiency of the evidence to establish probable cause before the grand jury, every legitimate inference that may be drawn from the evidence must be drawn in favor of the indictment and neither the trial court nor the appellate court on review may substitute its judgment as to the weight of the evidence for that of the Grand Jury.

State v. Ontai, 84 Hawai'i 56, 63, 929 P.2d 69, 76 (1996) (citations, internal quotation marks, and brackets omitted); see State v. Yip, 92 Hawai'i 98, 105, 987 P.2d 996, 1003 (App. 1999).

The appellate court applies "two different standards of review in addressing evidentiary issues. Evidentiary rulings are reviewed for abuse of discretion, unless application of the rule admits of only one correct result, in which case review is under the right/wrong standard." State v. Ortiz, 91 Hawai'i 181, 189, 981 P.2d 1127, 1135 (1999) (citations and internal quotation marks omitted). Regarding evidentiary rulings on "admissibility based upon relevance, under [HRE] Rules 401 and 402, the proper standard of appellate review is the right/wrong standard." However, "[e]videntiary decisions based on HRE Rule 403, which require a judgment call on the part of the trial court, are reviewed for an abuse of discretion." State v. Staley, 91 Hawai'i 275, 281, 982 P.2d 904, 910 (1999) (citations, internal quotation marks, and some original brackets omitted). "The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant." State v. Plichta, 116 Hawai'i 200, 214, 172 P.3d 512, 526 (2007) (citation and internal quotation marks omitted).

The Hawai'i Supreme Court has stated the following regarding sufficient evidence to support a conviction on appeal:

> . . . The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact. Indeed, even if it could be said in a bench trial

that the conviction is against the weight of the evidence, as long as there is substantial evidence to support the requisite findings for conviction, the trial court will be affirmed.

"Substantial evidence" as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. And as trier of fact, the trial judge is free to make all reasonable and rational inferences under the facts in evidence, including circumstantial evidence.

State v. Matavale, 115 Hawai'i 149, 157-58, 166 P.3d 322, 330-31 (2007) (citation and brackets omitted).

IV. DISCUSSION

    A. Lewis's Constitutional Challenges

        1. *The Dormant Commerce Clause*

Lewis challenges the constitutionality of both HRS §§ 707-756 and 707-759 on "dormant" Commerce Clause grounds. Although Lewis addresses the statutes collectively, we will address each in turn. HRS § 707-756 provides, in relevant part:

**§ 707-756 Electronic enticement of a child in the first degree.** (1) Any person who, using a computer or any other electronic device:

    (a) Intentionally or knowingly communicates:

        (i) With a minor known by the person to be under the age of eighteen years;
        (ii) With another person, in reckless disregard of the risk that the other person is under the age of eighteen years, and the other person is under the age of eighteen years; or
        (iii) With another person who represents that person to be under the age of eighteen years;

    (b) With the intent to promote or facilitate the commission of a felony:

        (i) That is a murder in the first or second degree;
        (ii) That is a class A felony; or
        (iii) That is another covered offense as defined in section 846E-1,
    agrees to meet with the minor, or with another person who represents that person to be a minor under the age of eighteen years; and

    (c) Intentionally or knowingly travels to the agreed upon meeting place at the agreed upon meeting time,

is guilty of electronic enticement of a child in the first
degree.

HRS § 707-756(1) (Supp. 2012).

As this court recently discussed in <u>State v. Alangcas</u>,
No. 30109, 2013 WL 6230085, at *13 (Haw. Ct. App. Nov. 29, 2013),

> [t]he U.S. Constitution grants Congress the power to
> regulate commerce "with foreign Nations, and among the
> several States, and with the Indian tribes." U.S. Const.
> art. I, § 8, cl. 3. However, "[e]ven if Congress has not
> specifically regulated an incident of interstate commerce,
> state laws that unduly burden interstate commerce and
> thereby impede free private trade in the national
> marketplace generally violate the so-called dormant commerce
> clause" of the U.S. Constitution. <u>People v. Hsu</u>, 99 Cal.
> Rptr. 2d 184, 190 (Cal. Ct. App. 2000) (citing <u>General
> Motors Corp. v. Tracy</u>, 519 U.S. 278, 287 (1997)). The
> framework for determining whether a state statute violates
> the dormant Commerce Clause is set forth in <u>Pike v. Bruce
> Church, Inc.</u>, 397 U.S. 137 (1970):
>
> > Where the statute regulates evenhandedly to effectuate
> > a legitimate local public interest, and its effects on
> > interstate commerce are only incidental, it will be
> > upheld unless the burden imposed on such commerce is
> > clearly excessive in relation to the putative local
> > benefits. If a legitimate local purpose is found,
> > then the question becomes one of degree. And the
> > extent of the burden that will be tolerated will of
> > course depend on the nature of the local interest
> > involved, and on whether it could be promoted as well
> > with a lesser impact on interstate activities.
>
> <u>Id.</u> at 142 (internal citation omitted).

Like the defendant in <u>Alangcas</u>, Lewis relies on
<u>American Libraries Ass'n v. Pataki</u>, 969 F. Supp. 160 (S.D.N.Y.
1997), to argue that HRS § 707-756 violates the "dormant"
Commerce Clause because: (1) HRS § 707-756 regulates conduct
occurring wholly outside of Hawai'i; (2) HRS § 707-756 places
burdens on interstate commerce that outweigh the local benefits
derived from the statute; and (3) statutes regulating the
internet, like HRS § 707-756, demand uniform, national regulation
as opposed to a patchwork of inconsistent state regulations.[4]
Based on the authorities cited and the analysis set forth in
<u>Alangcas</u>, we reject Lewis's argument that HRS § 707-759 violates

---

[4]    The defendant in <u>Alangcas</u> also raised a fourth argument, not
raised by Lewis here, that HRS § 707-756 is not a "luring" statute and outlaws
conduct/communications that are not harmful to minors.

11

the "dormant" Commerce Clause of the United States Constitution. See Alangcas, 2013 WL 6230085, at *13-17.

Although Lewis makes no distinct argument with respect to HRS § 707-759, the analysis is not identical. HRS § 707-759 provides, in relevant part:

> **§ 707-759 Indecent electronic display to a child.**
> (1) Any person who intentionally masturbates or intentionally exposes the genitals in a lewd or lascivious manner live over a computer online service, internet service, or local bulletin board service and who knows or should know or has reason to believe that the transmission is viewed on a computer or other electronic device by:
>
> (a) A minor known by the person to be under the age of eighteen years;
>
> (b) Another person, in reckless disregard of the risk that the other person is under the age of eighteen years, and the other person is under the age of eighteen years; or
>
> (c) Another person who represents that person to be under the age of eighteen years,
>
> is guilty of indecent electronic display to a child.
>
> . . . .

HRS § 707-759 (Supp. 2012).

Unlike HRS § 707-756, HRS § 707-759 does not have an explicit "enticement" or "luring" element; rather, it prohibits the intentional masturbation or exposure of one's genitals "in a lewd or lascivious manner live over" the internet to a "minor."[5] See HRS § 707-759(1). Thus, HRS § 707-759 is most aptly viewed as akin to an "indecent exposure,"[6] "open lewdness,"[7] or a

---

[5] As stated therein, HRS § 707-759 applies if the person viewing the transmission is known to be a minor, the actor engages in the prohibited conduct in reckless disregard of the risk that the (minor) viewer is a minor, or if the viewer represents to the actor that he or she is a minor. HRS § 707-759(1)(a), (b), & (c).

[6] HRS § 707-734 (1993) is Hawaii's "indecent exposure" statute, and it states that "[a] person commits the offense of indecent exposure if, the person intentionally exposes the person's genitals to a person to whom the person is not married under circumstances in which the actor's conduct is likely to cause affront."

[7] HRS § 712-1217 (1993) is Hawaii's "open lewdness" statute, and it states that "[a] person commits the offense of open lewdness if in a public place the person does any lewd act which is likely to be observed by others who would be affronted or alarmed."

"sexual assault" (fourth degree)[8] statute, all of which appear to be constitutionally permissible under the State's expansive police powers.  See generally W. H. Greenwell, Ltd. v. Dep't of Land & Natural Res., 50 Haw. 207, 209, 436 P.2d 527, 528 (1968) (stating that although "not absolute," the state's "police power is one of the least limitable of governmental powers").  HRS § 707-759 is most like these types of criminal statutes because it is primarily concerned with suppressing criminal *conduct* (namely, "live" lewd acts directed at a "minor").  We see little to distinguish HRS § 707-759's prohibitions from those involving, say, a situation in which someone masturbates or commits a lewd act on the lawn outside of the window of a child's house.  Additionally, it is difficult to conceive of any legitimate commerce that is burdened by penalizing this behavior.  See 15B AM. JUR. 2D *Computers and the Internet* § 5 (showing that states have upheld statutes that involve the valid exercise of police power and that regulate the "conduct of individuals who intended to use the Internet to endanger the welfare of children").  The effect on interstate commerce, if any, is merely "incidental," and pales in comparison to the legitimate, local law enforcement purpose of protecting the State's minors from these sorts of "live" criminal acts (*i.e.,* masturbation and lewd exposure).  See Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970).  Accordingly, we conclude that HRS § 707-759 does not violate the "dormant" Commerce Clause of the United States Constitution.

---

    [8]    HRS § 707-733 (1993) is entitled "Sexual assault in the fourth degree," and it includes the following:

> (1) A person commits the offense of sexual assault in the fourth degree if:
>
> . . .
>
>   (b)    The person knowingly exposes the person's genitals to another person under circumstances in which the actor's conduct is likely to alarm the other person or put the other person in fear of bodily injury[.]

2.    *Free Speech*

Lewis's entire argument that HRS §§ 706-756 and 707-759 are constitutionally infirm because they violate free speech protections is as follows:

> HRS § 707-756 and HRS § 707-759 potentially suppresses [sic] a large amount of speech that adults have a constitutional right to send and receive over the Internet. Therefore, HRS § 707-756 and HRS § 707-759 represent unconstitutional intrusions into freedom of speech as guaranteed by Article I, Section 4, of the Constitution of the State of Hawaii and the First Amendment of the Constitution of the United States.

This argument is without merit. Lewis has not met the applicable burden to establish a constitutional defect. See State v. Mallan, 86 Hawai'i 440, 446, 950 P.2d 178, 184 (1998).

The First Amendment is applicable to the states through the Fourteenth Amendment, and it provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I.; Edwards v. S. Carolina, 372 U.S. 229, 235 (1963) (stating that "[i]t has long been established that these First Amendment freedoms are protected by the Fourteenth Amendment from invasion by the States"). Similarly, the Hawai'i Constitution guarantees that "[n]o law shall be enacted . . . abridging the freedom of speech." Haw. Const. art. I, § 4.

These constitutional guarantees are not absolute, however. The Hawai'i Supreme Court has held:

> The First Amendment to the United States Constitution does not protect speech which is part of a course of criminal conduct. [Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 498 (1949); Cox v. Louisiana, 379 U.S. 559, 563 (1965)]. In Giboney, the United States Supreme Court stated:
>
>> It rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute. We reject the contention now.
>
> [Giboney, 336 U.S. at 498].

State v. Pegouskie, 107 Hawai'i 360, 369, 113 P.3d 811, 820 (App. 2005).

Additionally, speech related to illegal sexual activity with minors has not been held to require First Amendment

14

protection where it is an element of the crime addressed by the statute. United States v. Meek, 366 F.3d 705, 721 (9th Cir. 2004) (citation omitted) ("The inducement of minors to engage in illegal sexual activity enjoys no First Amendment protection."); United States v. Bailey, 228 F.3d 637, 639 (6th Cir. 2000) ("[T]he Defendant simply does not have a First Amendment right to attempt to persuade minors to engage in illegal sex acts."); People v. Williams, 551 N.E.2d 631, 634 (Ill. 1990) ("[W]e conclude that the luring or attempted luring of a child into an automobile for a criminal purpose is in no way protected by the first amendment."). In other words, although the "ideas contained in the communication may be protected speech," when the statutes involve "purposely" engaging in "sexual advances directed at a child," the expression "may be regulated by criminalizing the conduct." See M. Megan McCune, Virtual Lollipops and Lost Puppies: How Far Can States Go to Protect Minors Through the Use of Internet Luring Laws, 14 CommLaw Conspectus 503, 534 (2006).

Looking to HRS §§ 707-756 and 707-759, it is clear that the speech impinged upon is an essential element of the crimes challenged. To violate HRS § 707-756, one must intentionally or knowingly *communicate* with a "minor," agree to meet the "minor" with the intent to promote or facilitate a felony, and then intentionally or knowingly travel to the agreed upon place at the agreed upon time. See HRS § 707-756 (emphasis added). Similarly, to violate HRS §707-759, an actor must intentionally masturbate/expose his or her genitals in a "lewd or lascivious manner" through a "*live [communication] over*" the internet to a "minor." See HRS § 707-759(1) (emphasis added). To the extent that these statutes involve an aspect of speech, the speech is inextricably intertwined with the validly criminalized conduct in the statutes. Thus, because the speech is an "integral part of conduct in violation of a valid criminal statute," HRS §§ 707-756 and 707-759 do not violate either the First Amendment of the United States Constitution or Article I, Section 4 of the Hawaiʻi

Constitution.  See Pegouskie, 107 Hawai'i at 369, 113 P.3d at 820; see also New York v. Ferber, 458 U.S. 747, 761-62 (1982).

B.    Lewis's Statement to the Police

Lewis next argues that the statements he made to Detectives Fujitani and Sunada were "involuntarily obtained and without proper warning under Miranda v. Arizona."  "[B]efore reference is made at trial to statements made by the accused during custodial interrogation,[9] the prosecutor must first demonstrate that certain safeguards were taken before the accused was questioned, i.e., Miranda warnings."  State v. Rippe, 119 Hawai'i 15, 22, 193 P.3d 1215, 1222 (App. 2008) (brackets and internal quotation marks omitted; footnote added) (citing State v. Ketchum, 97 Hawai'i 107, 116, 34 P.3d 1006, 1015 (2001)).  A proper Miranda warning requires that the accused is informed that they have a right to remain silent, that anything said could be used against them in court, that they have a right to the presence of an attorney, and that an attorney will be appointed for them if they are unable to afford one.  Ketchum, 97 Hawai'i at 116, 34 P.3d at 1016.  "After a defendant has been adequately apprised of his Miranda rights, he may waive effectuation of these rights provided the waiver is made voluntarily, knowingly, and intelligently."  State v. Gella, 92 Hawai'i 135, 143, 988 P.2d 200, 208 (1999) (brackets, citations, and internal quotation marks omitted).

In the present case, Lewis was apprised of his constitutional rights pursuant to a proper Miranda warning. Prior to being informed of his rights, Lewis acknowledged that he had a high school education, could read and write English, and that he was making the statement of his own free will. Thereafter, he was informed of his Miranda rights and was shown a form entitled "Warning Persons Being Interrogated Of Their Constitutional Rights," which he was instructed to read as it was

---

[9]    It is undisputed that Lewis was subject to a custodial interrogation, which was defined Miranda as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  Miranda v. Arizona, 384 U.S. 436, 444 (1966).

read aloud to him. The form had the rights explicitly stated on it. Lewis indicated that he wanted to waive those rights, both orally and by signing the form. Although he was initially hesitant in responding to whether he wanted an attorney, stating that he had "never gone through anything . . . like this before," he eventually declined one, with no prompting or suggestion by Fujitani or Sunada regarding whether he should or should not proceed without an attorney present. He was also informed that he could stop the questioning at "any time." Accordingly, the Circuit Court did not err by concluding that Lewis was properly warned of his Miranda rights and that he voluntarily, knowingly, and intelligently waived those rights.

Lewis nevertheless maintains that his October 22, 2008 statement was not voluntary because his confession that he "might have had sex with [Shanna] . . . was a product of fatigue from having worked all day, apprehension and the compelled belief that the interrogation would stop if he answered the questions." Lewis relies, in part, on HRS § 621-26 (1993), which provides that: "No confession shall be received in evidence unless it is first made to appear to the judge before whom the case is being tried that the confession was in fact voluntarily made." The Hawai'i Supreme Court examined this voluntariness requirement in State v. Kelekolio:

> Under the fifth amendment to the United States Constitution and article 1, section 10 of the Hawaii Constitution, [n]o person shall . . . be compelled in any criminal case to be a witness against himself or herself. . . . The constitutional right against self-incrimination prevents the prosecution's use of a defendant's extrajudicial admissions of guilt where such admissions are the product of coercion. . . . The burden is on the prosecution to show that the statement was voluntarily given and not the product of coercion. The burden is particularly heavy in cases where the defendant is under arrest.

74 Haw. 479, 501-02, 849 P.2d 58, 69 (1993) (footnotes, citations, internal quotation marks, and brackets omitted).

Lewis's argument that his statement was involuntarily obtained is unavailing. Before Lewis began giving his statement, he was explicitly informed that he could stop answering questions at any time. The Circuit Court found that "[a]t all times . . .

[Lewis] sounded rational, clear, and responsive" and "indicat[ed] that he understood the questions and his mind was clear." Additionally, the Circuit Court specifically found that Lewis was not promised that he could go home or that he would not be charged if he made a statement. Lewis acknowledged this fact in his interview with police, stating "no" to the questions about whether he was promised anything in exchange for making a statement and whether anyone coerced him in any manner. Finally, regarding the fatigue assertion, although a defendant's mental and physical condition can be considered in deciding the voluntariness of custodial statements, doing so here does not warrant a conclusion of involuntariness. See In re Doe, 90 Hawai'i 246, 254, 978 P.2d 684, 692 (1999) (citation omitted). Here, like in State v. Kelekolio, Lewis's alleged lack of sleep did not render his statements involuntary. See Kelekolio, 74 Haw. at 503-04, 849 P.2d at 69-70. Lewis's lack of sleep was not the product of any "impermissible scheme on the part of the police to lower his resistance or render him susceptible to improper suggestion." In addition, the alleged tiredness also appeared to have no bearing on the interrogation at all. Id. at 504, 849 P.2d at 70. Lewis in fact stated "I'm fine," in response to a question about whether he felt well enough to sit in the interrogation room and tell his version of events. In light of the totality of the circumstances, we conclude that the prosecution carried its burden to establish that Lewis's statements were voluntarily given, not the product of coercion, and properly obtained in compliance with Miranda.

C.    The Polygraph Evidence

Lewis contends that the Circuit Court erred by refusing to allow expert testimony regarding a polygraph examination that Lewis took. It is well-established in Hawai'i that polygraph results are not admissible, whether offered by the prosecution or defense. State v. Okumura, 78 Hawai'i 383, 397, 894 P.2d 80, 94 (1995) (citing State v. Antone, 62 Haw. 346, 357, 615 P.2d 101, 109 (1980)); see also State v. Chang, 46 Haw. 22, 31, 374 P.2d 5, 11 (1962)); State v. Kun Ok Cho, No. 28349, (App. March 12, 2009)

(SDO). The rationale behind this rule is that polygraph tests are not considered reliable. Chang, 46 Haw. at 31, 374 P.2d at 11.

Despite this long-standing rule, Lewis contends that "[t]he constitutional right to present evidence overrides the exclusionary rule barring polygraph tests." The United States Supreme Court squarely addressed this argument in United States v. Scheffer, 523 U.S. 303 (1998). In Scheffer, the defendant was a volunteer informant on drug investigations for the Air Force Office of Special Investigations. Id. at 305. As part of his duty as an informant, Scheffer was asked to take a drug test and, shortly thereafter, a polygraph examination. Id. at 305-06. Scheffer's drug test revealed the presence of methamphetamine, while his polygraph test "indicated no deception" when he denied using drugs since joining the Air Force. Id. at 306. At his trial by general court-martial for using methamphetamine, he was not allowed to introduce evidence related to the polygraph test, pursuant to Military Rule of Evidence 707.[10] Id. at 306-07. Scheffer was convicted on all counts. Id. at 307.

Before the Supreme Court, Scheffer argued that the preclusion of polygraph evidence infringed upon his right to present a defense. Id. at 307 n.3. The Court began by stating that a defendant's right to present evidence is subject to reasonable restrictions, which include other legitimate interests in the criminal trial process. Id. at 308. Noting the lack of scientific consensus regarding the reliability of polygraph evidence, the Court ruled that a per se bar on polygraph evidence in military trials advanced the legitimate interest in barring unreliable evidence. Id. at 310-12. The Court also stated that the ban served the interests of preserving the jury's core

_____

[10] Military Rule of Evidence 707 stated the following:

> (a) Not withstanding any other provision of law, the results of a polygraph examination, the opinion of a polygraph examiner, or any reference to an offer to take, failure to take, or taking of a polygraph examination, shall not be admitted into evidence.

Scheffer, 523 U.S. at 306-07 (internal quotation marks omitted).

function of making credibility determinations and avoiding litigation over issues other than the guilt or innocence of the accused and that a ban on polygraph evidence did not implicate any significant interest of the accused.[11] Id. at 312-17. In accordance with this precedent, Hawai'i's bar on polygraph evidence does not override Lewis's constitutional right to present evidence, and the Circuit Court did not err by excluding Lewis's polygraph evidence in this case.

      D.   The Indictment

      We reject Lewis's argument that there was insufficient evidence to sustain Count I of the Indictment. As set forth above in conjunction with the Applicable Standards of Review, "neither the trial court nor the appellate court on review may substitute its judgment as to the weight of the evidence for that of the Grand Jury." Ontai, 84 Hawai'i at 63, 929 P.2d at 76 (citations and brackets omitted); see also State v. Yip, 92 Hawai'i 98, 105, 987 P.2d 996, 1003 (App. 1999). Every legitimate inference from the evidence must be drawn in favor of the Indictment and the probable cause standard is applicable. Ontai, 84 Hawai'i at 63, 929 P.2d at 76.

      Count I of the Indictment charged Lewis with Electronic Enticement, in violation of HRS § 707-756, and therefore required evidence establishing probable cause with respect to following elements: (1) intentionally or knowingly communicate through a computer or any electronic device with a person known or thought to be under the age of eighteen years; (2) agree to meet with the minor with the intent to promote/facilitate a felony; and (3) intentionally or knowingly travel to the agreed upon meeting place at the agreed upon time. See HRS § 707-756(1)(a), (b), & (c).

---

[11] Hawai'i courts have also recognized these general interests. See State v. Klafta, 73 Haw. 109, 117, 831 P.2d 512, 517 (1992) (citing State v. Batangan, 71 Haw. 552, 799 P.2d 48 (1990)) (noting that expert testimony regarding credibility is inadmissible); State v. Suan, 121 Hawai'i 169, 176, 214 P.3d 1159, 1166 (App. 2009) (holding that a prosecutor's statement was improper because "it injected issues broader than [the defendant's] guilt or innocence under the controlling law into the case").

Lewis argues that there was no evidence adduced before the Grand Jury that Lewis intentionally or knowingly traveled to the agreed upon meeting place at the agreed upon time, pursuant to HRS § 707-756(1)(c). Although acknowledging the evidence that he traveled to the Zippy's parking lot, drove around, and exited, Lewis argues that he did not stop, exit his vehicle, and actually consummate "travel[ing] to the agreed upon meeting place."

We reject this argument. In addition to the foregoing, Fujitani testified to the Grand Jury that, the next day, Lewis chatted with "Shanna" and stated, "he had gone there, he didn't see me, so he had gone home." Fujitani also testified to the Grand Jury that, in his post-arrest interview statement, Lewis admitted, *inter alia*, "that he was the person that showed up at [] Zippy's to meet Shanna on October 15[th], 2008 in the black Mazda." We conclude that, taking "every legitimate inference that may be drawn from the evidence" in favor of the Indictment, there was sufficient evidence presented to the Grand Jury to support Count I of the Indictment, including that he intentionally or knowingly traveled to the agreed upon meeting place. Accordingly, the Circuit Court did not err in denying Lewis's motion to dismiss Count I.

E.    The Camtasia Recordings, Screen Captures, and Chats

Lewis argues that the Circuit Court abused its discretion in allowing the State to present the Camtasia videos, screen captures, and chats. In particular, Lewis objects to the court allowing the jury to view the Camtasia videos showing him masturbating through his web camera. Lewis argues that the Circuit Court should have excluded the Camtasia videos pursuant to HRE Rules 401,[12] 403,[13] and 404(b).[14]

---

[12]    HRE Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[13]    HRE Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of
(continued...)

Lewis contends that, although constituting material evidence for the Indecent Electronic Display charges, to which he had pled guilty, the Camtasia videos were irrelevant to the Electronic Enticement charge. However, as the Circuit Court found, the videos were relevant pursuant to HRE Rule 401, and therefore admissible pursuant to HRE Rules 402 and 404(b), because they were relevant to the issue of whether Lewis possessed the requisite "intent to promote or facilitate the commission of a felony," in this case, sexual assault. See HRS § 707-756(1)(b).[15]

Lewis also maintains that, when the State published the visual recordings of him masturbating with his erect penis on a

---

[13](...continued)
unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[14]     HRE Rule 404(b) states, in relevant part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible where such evidence is probative of another fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident. . . .

[15]     HRS § 707-756(1)(b) includes reference to a felony that is a "covered offense as defined in section 846E-1." The "covered offenses" in section 846E-1 include the crimes of sexual assault in the first and third degree. See HRS § 846E-1 (Supp. 2012).

HRS § 707-730 states, in relevant part, the following:

(1) A person commits the offense of sexual assault in the first degree if:
. . . .
(c)     The person knowingly engages in sexual penetration with a person who is at least fourteen years old but less than sixteen years old[.]

HRS § 707-732 states, in relevant part, the following:

(1) A person commits the offense of sexual assault in the third degree if:
. . . .
(c)     The person knowingly engages in sexual contact with a person who is at least fourteen years old but less than sixteen years old or causes the minor to have sexual contact with the person[.]

screen in the courtroom, the prejudicial effect was significant, immeasurable, irreversible, and far outweighed the relevancy and probative value. We recognize the prejudicial nature of such evidence, but the Circuit Court's decision that the probative value here, on the issue of Lewis's intent to commit a felony, outweighed that prejudice does not clearly exceed the bounds of reason or disregard rules or principles of law or practice to the the substantial detriment of a party litigant. The State had the heavy burden to prove beyond a reasonable doubt, *inter alia*, that Lewis intended to communicate with a "minor", with the intent to promote or facilitate the commission of a felony. We cannot conclude that the Circuit Court abused its discretion in weighing the prejudicial effect and the probative value under the circumstances of this case. See State v. McKnight, 128 Hawaiʻi 328, 335-36, 289 P.3d 964, 971-72 (App. 2012) (holding that probative value of live images of defendant masturbating during internet chats with undercover agent posing as 15-year-old girl was not substantially outweighed by danger of unfair prejudice), cert. granted, SCWC-28901, 2012 WL 1951392 (Haw. May 31, 2012); State v. Sakata, No. 29157, (App. Aug. 26, 2009) (SDO) (holding that trial court did not abuse its discretion by admitting video of Sakata exposing himself, doing "more than just him standing there and dropping his pants," via webcam).

F.    Sufficiency of the Evidence to Sustain Conviction

Lewis challenges the sufficiency of the evidence supporting the jury's conclusion that he "intentionally or knowingly travel[ed] to the agreed upon meeting place at the agreed upon time," as required under HRS § 707-756(1)(c). He argues that he "did not stop, exit his vehicle and actually consummate traveling to the agreed upon meeting place" because he only "entered the parking lot, drove around Zippy's and exited." As stated above, the Hawaiʻi Supreme Court has held:

> The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact. . . . "Substantial evidence" . . . is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

23

Matavale, 115 Hawai'i at 157-58, 166 P.3d at 330-31 (citation and brackets omitted).

In the present case, there was sufficient evidence to support the conviction because there was "substantial evidence" to support the jury's conclusion that Lewis "intentionally or knowingly travel[ed] to the agreed upon meeting place at the agreed upon time." Although the evidence shows that Lewis did not fully stop or exit his vehicle upon reaching Zippy's, there is no evidence that Lewis and "Shanna" specifically agreed to meet inside the Zippy's restaurant, but rather, merely agreed to meet at "Zippy's." In addition, trial evidence included, *inter alia*, Lewis's "chat" statements that he had been "there waiting," but did not see "Shanna," so he went home. We conclude, in light of all of the evidence presented at trial, there was substantial evidence to support Lewis's Electronic Enticement conviction.

V.     CONCLUSION

For these reasons, the Circuit Court's April 26, 2010 Judgment of Conviction and Sentence is affirmed.

DATED: Honolulu, Hawai'i, December 23, 2013.

On the briefs:

Harrison L. Kiehm
for Defendant-Appellant

Albert Cook
Deputy Attorney General
State of Hawai'i
for Plaintiff-Appellee

Presiding Judge

Associate Judge

Associate Judge